**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MONTANA**

| | |
|---|---|
| In re | |
| **TODD W. PRIGGE**, | Case No.  **09-61545-13** |
| Debtor. | |

## MEMORANDUM   OF   DECISION

At Butte in said District this 4th day of March, 2010.

Pending in this Chapter 13 case is confirmation of the Debtor's amended Plan and objections thereto filed by Chapter 13 Trustee and by Gregg and Malinda Pike ("Pikes") on the ground the Plan is not filed in good faith as required by 11 U.S.C. § 1325(a)(3).  The hearing on confirmation was held at Great Falls on December 18, 2010.  Debtor Todd W. Prigge ("Prigge" or "Debtor") filed an amended Plan and amended Schedules I and J on December 17, 2009 (Docket No. 62) and appeared and testified at the hearing represented by attorney Gary S. Deschenes of Great Falls.  The Standing Chapter 13 Trustee Robert G. Drummond appeared in opposition.  Pikes were represented by attorney John P. Paul of Great Falls.  Debtor's Exhibits ("Ex.") A and B, and the Trustee's Ex. 1, 2, 3, 4, and 7, were admitted into evidence without objection.  At the conclusion of the hearing the Court granted the parties time to file stipulated facts relating to the Trustee's objection no. 6[1], and briefs, after which the matter would be

---

[1]Objection no. 6 in Docket No. 58, pages 3 to 10, is based on the disposable income requirement of 11 U.S.C. § 1325(b), and alleges that Official Form 22C does not follow § 1325(b)(3) as it incorporates 11 U.S.C. § 707(b)(2), because Debtor claims excessive expenses for payment of debts.

deemed submitted and taken under advisement.  The Court extended briefing by agreement of the parties through the end of January 2010.  The stipulated facts and briefs have been filed and reviewed by the Court together with the record and applicable law.  The matter is ready for decision.  For the reasons set forth below the Trustee's "disposable income" objection to confirmation is sustained in part and confirmation of Debtor's amended Plan will be denied because of Prigge's voluntary contributions to his 401(k) plan, but the Debtor will be granted a final opportunity to file a confirmable Plan.

This Court has jurisdiction in this Chapter 13 case under 28 U.S.C. § 1334(a). Confirmation of Debtor's Plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L).  This Memorandum includes the Court's findings of fact and conclusions of law.

### FACTS

The Trustee and Debtor set forth the following agreed facts in the Stipulated Facts (Docket No. 67):

1. The Debtor filed his Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the District of Montana on August 5, 2009.

2. When he filed his bankruptcy petition, the Debtor simultaneously filed his Schedules and Form 22C.

3. On his completed Form 22C, the Debtor calculated on Line 15, Annualized current monthly income for § 1325(b)(4), the total amount of $89,739.96. On Line 17, the Debtor checked the box indicating the applicable commitment period is five years.

4. On Line 25B of Form 22C, the Debtor correctly listed the IRS Housing and Utilities Standards for Cascade County in the amount of $775.00. From this amount, the Debtor deducted $1,517.00. The Debtor entered "0.00" in the calculation on Line 25B for the total

amount deducted from current monthly income.

5. On Line 28, the Debtor deducted Local Standards for transportation ownership/lease expense. The Debtor calculated the IRS Transportation Standards, Ownership Costs in the amount of $489.00. From this, the Debtor deducted $500.00 for Average Monthly Payment for debts secured by Vehicle 1. The Debtor entered "0.00" as a deduction on Line 28 as the amount deducted from current monthly income.

6. On Line 47 of Form 22C, the Debtor deducted $1,517.00 as his home mortgage payment and $500.00 as his automobile loan payment for a total of $2,017.00 deducted from current monthly income.

7. The Debtor scheduled monthly disposable income in the amount of $1,063.69 on Line 59 of Form 22C. From this amount, however, the Debtor also deducted additional expense claims of $1,181.08. The Debtor describes this expenditure as "401 (K)."

In addition to the Stipulated Facts, other facts are established from Prigge's testimony and the exhibits admitted at the hearing.

Prigge testified that he is involved in the 401(k) plan at his employer FedEx, where he has worked as an aircraft mechanic, since 1988.  Ex. 7 shows his 401(k) account balance is $4,677.08 as of 6/30/2009[2].  He testified that he earned bonuses in his early years with the company, but not for the past 8 years.

Prigge testified that he went through a divorce prior to his bankruptcy case.  Ex. 4 is the divorce decree in Case No. DDR-07-467, Montana Eighth Judicial District Court, Cascade County, dated July 28, 2008.  As a result of his divorce he is allowed to take his son as a tax deduction only in alternate years, and that this year he will not have a tax refund like in prior

---

[2]In 2005 Prigge had about $24,000 in his 401(k) plan.  Ex. 7.  He testified that he withdrew funds in 2005 to buy land where he built his house.

years.

The divorce court awarded Prigge's spouse Lori half of Prigge's 401(k) retirement account. Ex. 4, p. 2. Ex. A shows that Prigge made a withdrawal from his 401(k) account in the amount of $10,000 as of 12/1/2008[3]. That withdrawal resulted in a suspension of voluntary contributions, Ex. B, which was to end on 5/30/2009. He testified that he made continual contributions to his 401(k) plan since 1988 except during 2 suspensions, and testified that his employer requires a contribution to his 401(k) plan of at least 3% of his earnings.

Ex. 3 includes some of Prigge's paystubs and show that his 401(k) pretax deduction resumed on the payment advice dated 6/12/2009 in the amount of $343.09. He testified that when he resumed making voluntary contributions in 2009, he did not know that he was going to file for bankruptcy relief, even though he admitted that he met with a bankruptcy attorney at that time. He testified that he now contributes $1,100 per month, but does not know if that reflects the maximum allowable 401(k) contribution, which is 25%. His employer matches his 401(k) contribution to a maximum of $500 per year.

Prigge testified that he began leasing a pickup from his father, which he had used without charge since 2003, in September of 2008 when he began paying his father $500 per month. In 2009 they converted the transaction to a purchase because, he testified, he wanted it in his name.

The Pikes purchased a residence from Prigge in 2004. They commenced a civil action against him in the Montana Eighth Judicial District Court, Cascade County, Case No. DDV-07-1220 for misrepresentation, fraud, and deceptive  practices regarding flooding, drainage or grading problems. Ex. 2. Prigge testified that he filed his Chapter 13 petition because he could

---

[3]Ex. A shows that $1,000 in federal tax was withheld.

not pay his attorney to fight the state court case, and was told by his attorney to file bankruptcy "right now" and that the Pikes' case could be litigated faster in bankruptcy court than in state court. He testified that he discussed the relative lengths of time to litigate the Pikes' case in state court versus bankruptcy court, and the possible garnishment of his earnings. He testified that he filed his Chapter 13 hoping to resolve his financial issues in one place.

Prigge listed Pikes on Schedule F as creditors holding unsecured claims, but in "Unknown" amount. He did not mark Pikes' claim as contingent, unliquidated, or disputed on Schedule F. In the divorce decree, Ex. 4, p. 3, the court ordered Prigge to pay 70% of the contingent liability to the Pikes.

Ex. 1 states that Prigge's home mortgage payment as of July 2009 was $1,345.07, while on Line 47 of Form 22C the average mortgage payment is stated as $1,517.00. Prigge testified that his mortgage payment is about $1,500, and did not explain why his testimony differed from the payment shown on Ex. 1. He testified that Wells Fargo allowed him to make weekly payments on his mortgage which are automatically deducted from his account.

Debtor's original Plan, Dkt. 3, proposed $100 monthly payments for 60 months, and the liquidation analysis stated $0.00 would be distributed to unsecured claims. The Trustee and Pikes filed objections to confirmation, including that the Plan was not filed in good faith as required by § 1325(a)(3), as shown by the small amount proposed to be paid to Pikes on their unknown claim. The Trustee also objected on the grounds of lack of feasibility based on Schedules I and J, and that the Debtor failed to satisfy the disposable income test of § 1325(b).

Debtor amended his Schedules I and J to show a monthly net income of $307.00. Prigge testified that he reduced his 401(k) contribution to $900 on Schedule I, although he has not yet

5

told the plan administrator to reduce his contribution amount. He filed his amended Plan, Dkt.

62, proposing monthly payments in the sum of $100 for 4 months and then $300 per month for

56 months. He admitted that the amended Plan does not pay all unsecured creditors in full, and

that he raised his payment by reducing his 401(k) contribution.

### DISCUSSION

It is well established law in this Circuit that for a bankruptcy court to confirm a plan,

"each of the requirements of section 1325 must be present and the debtor has the burden of

proving that each element has been met." *In re Barnes*, 32 F.3d 405, 407 (9th Cir. 1994); *In re*

*Andrews*, 49 F.3d 1404, 1408 (9th Cir. 1995); *In re McSparran*, 410 B.R. 664, 668 (Bankr. D.

Mont. 2009); *In re Tuss*, 360 B.R. 684, 690 (Bankr. D. Mont. 2007); *In re Tranmer*, 355 B.R.

234, 241 (Bankr. D. Mont. 2006). Section 1325(a)(1) requires confirmation of a plan if "the plan

complies with the provisions of this chapter and with the other applicable provisions of this

title." Therefore, the Debtor has the burden of proof on all elements of confirmation. *Meyer v.*

*Hill (In re Hill)*, 268 B.R. 548, 552 (9th Cir. BAP 2001).

The Trustee and Pikes both object to confirmation contending that the Debtor's amended

Plan is not proposed in good faith under § 1325(a)(3). The Trustee contends that Prigge

approached his duty to file accurate schedules in a cavalier fashion as shown by his amendments

to his Schedules and Statement of Financial Affairs disclosing numerous transactions with his

father, and his last minute filings requiring two confirmation hearings. The Trustee contends that

Form 22C is incorrect at line 50 ("administrative expense") and at Line 47a where his mortgage

payment is $1,517, and at Line 60 where his 401(k) payment was reduced to $900.

With respect to the Line 50, the Debtor argues that it is calculated prior to his 401(k)

expense at line 60 and reflects his past 6 months, not future payments.  The Debtor failed to

explain the discrepancy between his testimony and Line 47 ($1,517) and Ex. 1 ($1,345.07)

regarding the amount of his monthly mortgage payment.

### A. Disposable Income.

The Trustee's objections to confirmation nos. 5 and 6 are based on the "disposable

income" test under § 1325(b)(1)(B) which provides:

> (b)(1) If the trustee . . . objects to the confirmation of the plan, then the court may
> not approve the plan unless, as of the effective date of the plan –
>
> * * * *
>
> (B) the plan provides that all of the debtor's projected disposable income to be
> received in the applicable commitment period beginning on the date that the first
> payment is due under the plan will be applied to make payments to unsecured
> creditors under the plan.

*McSparran*, 410 B.R. at 668; *Tuss*, 360 B.R. at 690; *Tranmer*, 355 B.R. at 241.  The Ninth

Circuit explained:  "If a trustee or holder of an allowed unsecured claim objects to the

confirmation of a plan that does not propose to pay unsecured claims in full, the court may

confirm the plan only if the plan provides that all of the debtor's 'projected disposable income'

received during the 'applicable commitment period' is applied to make payments under the plan.

11 U.S.C. § 1325(b)(1)."  *Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868, 872 (9th

Cir. 2008).

The Trustee's objection no. 6 contends that Form 22C does not follow § 1325(b)(3) as it

incorporates § 707(b)(2).  The Trustee asks this Court to hold, in spite of § 707(b)(2)(A)(iii), that

"nothing in the disposable income calculation allows the deduction for payments on debt" and

then asks that the Debtor not be allowed any of the debt payments on Line 47 for his home

mortgage loan or auto loan, and be limited to the Internal Revenue Service ("IRS") Standards

allowance only for housing and vehicle operating expenses.  As support the Trustee cites the

following phrase in § 707(b)(2)(A)(ii)(I):  "Notwithstanding any other provision of this clause,

the monthly expenses of the debtor shall not include any payments for debts."  Based on this

phrase the Trustee argues that payments on secured debts under a different and subsequent

clause, § 707(b)(2)(A)(iii) are really an "'actual deduction' allowed under Section (iii)."  The

Trustee cites *Blausey v. U.S. Trustee*, 552 F.3d 1124, 1133 (9th Cir. 2009) that because §

707(b)(2)(A)(iii) does not include language allowing repayment of secured debts, the omission is

purposeful and deductions of payment of secured debt should not be allowed.

    The Trustee's statutory interpretation conflicts with basic canons of statutory

construction.  One such canon is that when the language of a statute is plain, the sole function of

the courts is to enforce it according to its terms unless the disposition required by the text is

absurd.  *Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004);

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 147

L.Ed.2d 1 (2000) (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109

S.Ct. 1026, 103 L.Ed.2d 290 (1989) (in turn quoting *Caminetti v. United States*, 242 U.S. 470,

485, 37 S.Ct. 192, 61 L.Ed. 442 (1917))); *Kagenveama*, 541 F.3d at 872.  Applying this first

canon of construction, by its own terms the above-quoted phrase from clause (ii) of §

707(b)(2)(A) applies only with respect to "any other provision *of this clause*."  (Emphasis added).

It thus cannot, by its plain language, apply beyond clause (ii) to a different clause such as clause

(iii).

    The Trustee's argument that clause (iii) of § 707(b)(2)(A) is subordinate to clause (ii)

8

because (iii) does not state that the Debtor's monthly expenses may include payments on secured debts would render clause (iii) nugatory.  Courts should disfavor interpretations of statutes that render statutory language superfluous, and so long as no positive repugnancy exists between the two laws, a court must give effect to both.  *Connecticut National Bank v. Germain*, 503 U.S. 249, 252-54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992).  Courts generally avoid construing one provision in a statute so as to suspend or supersede another provision.  *Rake v. Wade,* 508 U.S. 464, 471-72, 113 S.Ct. 2187, 2192, 124 L.Ed.2d 424 (1993).

The Trustee complains that nothing in clause (iii) authorizes a deduction for payments on secured debt, but all the authorization needed is found in clause (i) of § 707()b)(2)(A):

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income *reduced by the amounts determined* under clauses (ii), *(iii)*, and (iv), and multiplied by 60 is not less than the lesser of ....

§ 707(b)(2)(A)(i) (emphasis added).

The Trustee's argument that clause (ii) controls over clause (iii) conflicts with common canons of statutory construction, and with clause (i).  *Blausey*, cited by the Trustee, deals not with payments on secured debts under § 707(b)(2)(A)(iii), but instead with private disability insurance benefits so is not directly on point.  The Ninth Circuit directly addressed payment of secured debts under clause (iii) *In re Egebjerg*, 574 F.3d 1045, 1048-49 (9th Cir. 2009):  "In calculating the debtor's current monthly income, § 707(b)(2) permits the debtor to deduct "the average monthly payments on account of *secured debts*." § 707(b)(2)(a)(iii)."  (Emphasis in original).  The Trustee's objection no. 6 that the IRS Standards under clause (ii) control over clause (iii) is contrary to controlling Ninth Circuit authority, and based on *Egebjerg* the Court

9

will not sustain objection no. 6.

"Disposable income," as defined at § 1325(b)(2), was significantly changed by the

Bankruptcy Abuse Prevention and Consumer Protection  Act of 2005 (Pub. L. 109-8)

("BAPCPA").  *Kagenveama*, 541 F.3d at 873 n.2.  Section 1325(b)(2) now provides, in pertinent

part:

> For purposes of this subsection, "disposable income" means current monthly
> income received by the debtor (other than child support payments, foster care
> payments, or disability payments for a dependent child made in accordance with
> applicable nonbankruptcy law to the extent reasonably necessary to be expended
> for such child) less amounts reasonably necessary to be expended —
>
> > (A)(I) for the maintenance or support of the debtor or a dependent of the
> >  debtor, or for a domestic support obligation, that first becomes payable
> > after the date the petition is filed; and
> >
> > (ii) for charitable contributions (that meet the definition of "Charitable
> > contribution" under section 548(d)(3) to a qualified religious or
> > charitable entity or organization (as defined in section 548(d)(4)) in an
> > amount not to exceed 15 percent of gross income of the debtor for the
> > year in which the contributions are made; and
> >
> > (B) if the debtor is engaged in business, for the payment of expenditures
> > necessary for the continuation, preservation, and operation of such
> > business.

*McSparran*, 410 B.R. at 668; *Tuss*, 360 B.R. at 691; *Tranmer*, 355 B.R. at 241-42.

Section 1325(b)(3) states plainly:  "Amounts reasonably necessary to be expended under

paragraph (2) *shall* be determined in accordance with subparagraphs (A) and (B) of section

707(b)(2), if the debtor has current monthly income [above median] ...."  (Emphasis added).  In

*McSparran* this Court wrote:

> This Court's decision, *In re Kaufman*, 2008 WL 3878005, *4 (Bankr. D. Mont.
> 2008) cited *Kagenveama* for the proposition that, for above median income
> debtors, reasonably necessary expenses are calculated using the "Means Test" of §

> 707(b)(2)(A) and (B).  This Court in addition has adopted the analysis from *In re*
> *Austin*, 372 B.R. 668, 680-83 (Bankr. D. Vt 2007), that where a debtor is current
> on a secured obligation that is provided for in Form 22C, the Court refrains from
> determining whether the expense is reasonable.

410 B.R. at 671.

This Court applies a mechanical test, in which its discretion to determine the

reasonableness of a debtor's expenses in calculating disposable income has been curtailed by

BAPCPA.  *McSparran*, 410 B.R. at 670; *Tranmer*, 355 B.R. at 243-44, 246; *Tuss*, 360 B.R. at

691-92, 695.

In *Kagenveama* the Ninth Circuit rejected case authority which held that "projected

disposable income" is not related to "disposable income" as articulated *In re Hardacre*, 338 B.R.

718, 722 (Bankr. N.D. Tex. 2006), "because the plain language of § 1325(b) links 'disposable

income' to 'projected disposable income,' and we are bound by the definition of 'disposable

income' provided in § 1325(b)(2)(B)."  *Kagenveama,* 541 F.3d at 874 .  The Ninth Circuit wrote

that the line of authority set forth *In re Pak*, 378 B.R. 257, 263, 268 (9th Cir. BAP 2007) and *In re*

*Jass*, 340 B.R. 411, 415 (Bankr. D. Utah 2006),

> is unpersuasive because no text in the Bankruptcy Code creates a presumptively
> correct definition of "disposable income" subject to modification based on
> anticipated changes in income or expenses.  In fact, the textual changes enacted by
> BAPCPA compel the opposite conclusion.  The revised "disposable income" test
> uses a formula to determine what expenses are reasonably necessary.  *See* 11
> U.S.C. § 1325(b)(2)-(3).  This approach represents a deliberate departure from the
> old "disposable income" calculation, which was bound up with the facts and
> circumstances of the debtor's financial affairs.  *In re Winokur*, 364 B.R. 204, 206
> (Bankr. E.D. Va. 2007); *In re Farrar-Johnson*, 353 B.R. 224, 231 (Bankr. N.D.
> Ill. 2006) (stating that "[e]liminating flexibility was the point:  the obligations of
> [C]hapter 13 debtors would be subject to clear, defined standards, no longer left to
> the whim of a judicial proceeding") (internal quotations omitted).

* * * *

11

> We decline to follow the line of cases holding that Form B22C creates a
> presumptively correct definition of "disposable income."

*Kagenveama*, 541 F.3d at 874-75.

In *McSparran* the Court wrote: "If Debtor is an above median income Debtor then the

mechanical or formula test applies and this Court does not examine separately the reasonableness

of the expenses, but rather pursuant to § 1325(b)(3) the Debtor's expenses must be determined

under the "Means Test" of § 707(b)(2)(A) and (B). *Tranmer,* 355 B.R. at 245-46; *Tuss*, 360 B.R.

at 691, 695." *McSparran*, 410 B.R. at 671. The Trustee did not appeal *McSparran* and it

continues to be the rule in this district. The Debtor in the instant case is an above-median income

and the mechanical or formula test applies. *Id.*

The Trustee's final argument for his disposable income objection is that Line 47 of Form

22C "is not in keeping with the overall emphasis of BAPCPA." No contention exists that the

Debtor failed to utilize the proper Form 22C, and his Form B22C lists the secured debts to Wells

Fargo on the residential loan and MT FCU on the auto loan at Line 47. Payments on account of

secured debts are specifically provided for in the means test at § 707(b)(2)(A)(iii), which

provides:

> (iii) The debtor's average monthly payments on account of secured debts shall be
> calculated as the sum of –
>
> (I) the total of all amounts scheduled as contractually due to secured
> creditors in each month of the 60 months following the date of the petition; and
> (II) any additional payments to secured creditors necessary for the debtor,
> in filing a plan under chapter 13 of this title, to maintain possession of the
> debtor's primary residence, motor vehicle, or other property necessary for the
> support of the debtor and debtor's dependents, that serve as collateral for secured
> debts[.]

The Trustee's own evidence, Ex. 1, shows that Debtor's regular home mortgage payment

to Wells Fargo is contractually due to the secured creditor each month, and so is a "secured

debt."  Subsection 707(b)(2)(A)(iii)(I) does not include language that the monthly payments due

to secured creditors be "necessary for the support of the debtor" as is included in the following

subsection (iii)(II) for "additional payments," which would be expected if Congress intended

such a requirement in § 707(b)(2)(A)(iii)(I).

Section § 707(b)(2)(A)(i) specifically refers to clause (iii) as part of the means test.  The

Trustee's objection to Line 47 is overruled based on the plain language of § 707(b)(2)(A)(iii)[4].

The Ninth Circuit wrote in *Kagenveama*:

> [T]he disposition required by the plain text of § 1325(b) is not absurd.  Section
> 1325(b)'s new approach to calculating "disposable income" for above-median
> debtors produces a less favorable result for unsecured creditors when "disposable
> income" is plugged into the "projected disposable income" calculation.  We "will
> not override the definition and process for calculating disposable income under §
> 1325(b)(2)-(3) as being absurd simply because it leads to results that are not
> aligned with the old law."  [*In re Alexander*, 344 B.R. 742, 747 (Bankr. E.D. N.C.
> 2006)].  Furthermore, we will not decouple "disposable income" from the
> "projected disposable income" calculation simply to arrive at a more favorable
> result for unsecured creditors, especially when the plain text and precedent dictate
> the linkage of the two terms.  *See* [*In re Anderson*, 21 F.3d 355, 358 (9th Cir.
> 1994)] . . . .  If the changes imposed by BAPCPA arose from poor policy choices
> that produced undesirable results, it is up to Congress, not the courts, to amend the
> statute.  *See Lamie*, 540 U.S. at 542, 124 S.Ct. 1023.

This Court concludes that the Trustee's disposable income objection about Debtor's

payment of secured debt at Line 47 is without merit based on the plain language of § 1325(b)(3)

and § 707(b)(2)(A)(i) and (iii), and is contrary to binding Ninth Circuit precedent in

*Kagenveama.*

---

[4]Footnote 1 of *Kagenveama* states: "Rule 1007(b)(6) of the Federal Rules of Bankruptcy
Procedure requires a debtor to file a statement of current monthly income on Form B22C."  541
F.3d at 872 n.1.  The Ninth Circuit found no inconsistency between Form B22 and BAPCPA.

On the issue of Prigge's voluntary contributions to his 401(k) plan, he contends that the Trustee has not argued that the Debtor is not entitled to make 401(k) contributions. That is incorrect as the Trustee's objection and brief both argue against the 401(k) contributions, and in any event the burden of proof to satisfy the disposable income requirement is on the Debtor whether or not the Trustee objects. *Hill*, 268 B.R. at 552.

The Ninth Circuit in *Egebjerg* wrote: "We also note that the IRS guidelines themselves provide that "[c]ontributions to voluntary retirement plans are not a necessary expense. IRM § 5.15.1.23 ...." 574 F.3d at 1052. At footnote 3 the Ninth Circuit explained:

> We do not hold that § 5.15.1.23 is controlling, but that it is useful and persuasive
> in the context of this case – defining the parameters of § 5.15.1.10(1) and what
> was considered to provide for "health and welfare" at the time Congress cross-
> referenced the IRM's "Other Necessary Expenses" provisions.... By our narrow
> decision today, we do not mean to imply that the IRS standards have been
> incorporated wholesale into the Bankruptcy Code or that they control outcomes on
> other issues."

*Id.*

On the other hand the Ninth Circuit wrote: "When it introduced the means test, Congress provided, by reference to the IRS guidelines, specific guidance as to what qualifies as a necessary expense for the purposes of applying that test." *Egebjerg*, 574 F.3d at 1052. Therefore, in the context of contributions to voluntary retirement plans such as Prigge's $1,181.08 contribution listed on Line 60 of Form 22C, under controlling Ninth Circuit authority the IRS guidelines provide specific guidance that they are not a necessary expense, in any amount. *Egebjerg*, 574 F.3d at 1052 (Contributions to voluntary retirement plans are not a necessary expense).

Prigge suggests that *Egebjerg* is inapplicable because it discusses 401(k) loan repayments in a Chapter 7 case, not 401(k) contributions in a Chapter 13 case. That argument ignores §

14

1325(b)(3) which specifically requires that amounts reasonably necessary "shall be determined"

under § 707(b)(2).  Next Prigge mis-cites *Egebjerg* by a reference to non-existent "page 6388":

"Here, in BAPCPA, Congress expressly gave Chapter 13 debtors the ability to deduct 401(k)

payments from their disposable income calculation, § 1322(f), but did not included any similar

exemption for Chapter 7 debtors."  574 F.3d at 1050.

Section 1322(f) provides:  "A plan may not materially alter the terms of a loan described

in section 362(b)(19) and any amounts required to repay such loan shall not constitute

'disposable income' under section 1325."  This section highlights another reason why Prigge's

voluntary contribution to his 401(k) plan is not an allowable expense under the facts of this case.

*Egebjerg* held that it was error to allow the debtor to deduct his 401(k) loan repayment from

disposable income for purposes of the means test, even though § 1322(f) would specifically

allow repayment of a loan from a 401(k) plan in a chapter 13.  The instant case does not involve

repayment of a loan, however, but instead involves Prigge's voluntary contributions to his 401(k)

plan.

No provision similar to § 1322(f) (excluding repayment of 401(k) loans from disposable

income) is cited by the Debtor as authority to exclude voluntary 401(k) contributions, and the

Court is aware of none.  Another canon of statutory construction provides:  "Where Congress

includes particular language in one section of a statute but omits it in another, it is generally

presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."

*Keene Corp. v. United States*, 508 U.S. 200, 208, 113 S.Ct. 2035, 2040, 124 L.Ed.2d 118 (1993)

(internal quotation marks and alterations omitted).  If Congress had intended to exclude

voluntary 401(k) contributions from disposable income it could have drafted § 1322(f) to provide

for such an exclusion, or provided one elsewhere.  The absence of any exclusion of voluntary

401(k) contributions from the Code simply reinforces the Court's conclusion that *Egebjerg* and

the IRS guidelines provide that contributions to voluntary retirement plans are not a necessary

expense.  *Egebjerg*, 574 F.3d at 1052.[5]

The Debtor testified and argues on page 9 that it is mandatory for him to contribute at

least three percent to his 401(k) plan.  Ex. 3 reflects his 401(k) loan repayments and pretax

deduction, but does not separately list any mandatory 3% deduction.  If mandatory, then that 3%

would not be voluntary and prohibited under *Egebjerg*.  Taking 3% from $1,181.08 on Line 60 of

Form 22C would leave an additional $1,145.64 in disposable income.  Over 60 months that

amount would grow to $68,738.40 for distribution to unsecured claims and administrative

expenses.

In sum, the Court finds that the Debtor has failed to satisfy his burden of proof under the

disposable income test of § 1325(b)(2) and (3), and § 707(b)(2)(A).  Confirmation of Debtor's

amended Plan must be denied because of his exclusion from plan payments of $1,181.08 in

voluntary contributions to his 401(k) plan.

**B.  Good Faith**.

Debtor urges the Court to follow its reasoning *In re Chavez*, Case No. 07-60567-13

---

[5]Section 541(b)(7) "broadly excludes from 'property of the estate' funds 'withheld by an
employer from the wages of employees' as contributions to specified types of employee-benefit
plans, deferred compensation plans and tax-deferred annuity plans.  It seems intended to protect
amounts withheld by employers from employees that are in the employer's hands at the time of
filing bankruptcy, prior to remission of the funds to the plan."  5 COLLIER ON BANKRUPTCY, ¶
541.22C[1] (15th ed. rev.).  This subparagraph further provides that such amounts do "not
constitute disposable income, as defined in section 1325(b)(2)."  11 U.S.C. § 541(b)(7).

(October 11, 2007[6]) and *In re O'Connor*, Case No. 08-60641-13 (September 30, 2008[7]) that

overruled good faith objections because the adequacy of plan payments is determined by Form

22C.  Having concluded above that confirmation must be denied based on the voluntary 401(k)

contributions, the good faith objections become in that sense academic.

The Trustee and Pikes object that Debtor failed his burden of proof under § 1325(a)(3) to

show that the plan has been proposed in good faith.  *Hill*, 268 B.R. at 552.  The Court reviews

the totality of the circumstances to determine whether a plan has been proposed in good faith.  *In

re Leavitt*, 171 F.3d 1219, 1224-25 (9th Cir. 1999); *Eisen v. Curry (In re Eisen)*, 14 F.3d 469, 470

(9th Cir. 1994); *In re Gress*, 257 B.R. 563, 567, 18 Mont. B.R. 30, 34 (Bankr. D. Mont. 2000).  In

*Leavitt* the Ninth Circuit held that in determining whether a Chapter 13 plan is proposed in good

faith, a bankruptcy court should consider (1) whether debtors misrepresented facts in their plan or

unfairly manipulated the Code, (2) the debtors' history of filings and dismissals, (3) whether the

debtors intended to defeat state court litigation, and (4) whether egregious behavior is present.

*Leavitt*, 171 F.3d at 1224-25 (9th Cir. 1999); *Drummond v. Cavanagh (In re Cavanagh)*, 250 B.R.

107, 114 (9th Cir. BAP 2000).  The Trustee concedes that there is no history of filings and

---

[6]Memorandum of Decision, Docket No. 50.  At pages 9 and 10 this Court quoted
extensively *In re Austin*, 372 B.R. 668, 682-83 (Bankr. D. Vt. 2007), and ruled that where
debtors properly computed the plan payment under the means test the Court would not deny
confirmation based on the good faith requirement.  *See also In re Farrar-Johnson*, 353 B.R. 224,
232 (Bankr. N.D. Ill. 2006).  The Chapter 13 Trustee Drummond did not appeal the Court's
decision in *Chavez*.

[7]Memorandum of Decision, Docket No. 31.  As in *Chavez* the Court at pages 28-31
quoted *Austin,* 372 B.R. at 680-83 for the proposition that if a secured claim expense is properly
include on Form 22C then issues of reasonably necessary expense and bad faith would not arise.
The debtors in O'Connor failed to disclose a boat payment, but this Court determined that the
failure to include the boat expense on Form 22C did not by itself establish lack of good faith.
Drummond did not appeal the decision in *O'Connor*.

dismissals by Prigge, and that *Leavitt* factor is not present.

With respect to whether the Debtors' intended to defeat state court action, the Trustee argues that Debtor's lack of knowledge of his attorney fees in state court, and refusal to pay his unsecured creditors in his Plan rather than fund his 401(k) plan and pay his father lease payments, show that Prigge intended to defeat state court action. Based on the record the Court does not agree that Debtor intended to defeat state court litigation. Debtor's testimony that he could no longer pay his attorney to litigate the state court action, that he filed his Chapter 13 petition on the advice of counsel, and that he believed the litigation with Pikes would be less expensive in bankruptcy court, is credible. The evidence relative to the second *Leavitt* factor does not indicate the Plan was not proposed in good faith.

The Trustee contends that the small distribution proposed to unsecured claims, Debtor's prepetition changes to his budget and schedules, and his voluntary retirement contributions recommenced immediately prior to his bankruptcy, demonstrate egregious behavior and lack of good faith. The Debtor contends that his amendments were in response to the Trustee's objections to confirmation, and reflected Debtor's confusion about transactions involving his divorce and transactions with his father, none of which the Trustee argues is improper.

Egregious behavior supporting a finding of bad faith *In re Opper*, 20 Mont. B.R. 123, 132 (Bankr. D. Mont. 2002), consisted of debtors proposing $0 to unsecured creditors while making payments to secured creditors to retain luxury items such as a boat and snowmobile, repaying a loan to a 401(k) plan[8], and failure to list assets. *Opper*, 20 Mont. B.R. at 132.

---

[8]Under BAPCPA and § 1322(f) repayment of a 401(k) loan is now authorized. *Egebjerg*, 574 F.3d at 1050.

Since the Court above sustained the disposable income objection to confirmation based on Debtor's voluntary 401(k) plan contributions, the Court does not deem it necessary at this time to decide the good faith objections of the Trustee and Pikes.  If the Debtor fails to file a further amended Plan, Schedule I and Form 22C removing all voluntary 401(k) plan contributions and committing them to plan payments, then this case will be dismissed and the good faith objections will be moot.  On the other hand if the voluntary 401(k) contributions are committed to plan payments and distribution to unsecured creditors, that would result in a significantly greater distribution to unsecured claims, which would affect the good faith analysis.

Therefore, confirmation will be denied based on Debtor's failure to satisfy the disposable income test, and in the interests of the creditors and judicial economy the Court will abstain from deciding the good faith objections until such time as they may become ripe.

## CONCLUSIONS OF LAW

1.  This Court has jurisdiction in this case under 28 U.S.C. § 1334(a).

2.  Confirmation of Debtor's Plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

3.  Debtor failed to satisfy his burden of proof under 11 U.S.C. § 1325(b)(1)(B), (b)(2), and (b)(3) to show that his amended Plan provides that all of the Debtor's projected disposable income to be received in the applicable commitment period will be applied to make payments to unsecured creditors under the Plan.

4.  Contributions to voluntary retirement plans are not a necessary expense under 11 U.S.C. § 707(b)(2)(A)(ii).  *In re Egebjerg*, 574 F.3d 1045, 1052 (9th Cir. 2009).

**IT IS ORDERED** a separate Order shall be entered in conformity with the above sustaining the Chapter 13 Trustee's objection to confirmation in part and denying confirmation of

Debtor's amended Plan (Dkt. 62); the Debtor will be granted until March 19, 2010, to file a

further amended Plan, Schedule I, and Form 22C eliminating all voluntary contributions to his

401(k) plan at Line 60 and including those amounts in plan payments, or this case will be

dismissed without further notice or hearing; the Chapter 13 Trustee and Pikes will be granted

until April 5, 2010, to file responses; and if there are any remaining objections the final hearing

on confirmation will be set for April 16, 2010, after which the Court will either confirm the

further amended Plan or dismiss this case.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana